338 So.2d 344 (1976)
Leonard SCHEXNAYDER et ux., Plaintiffs-Appellees,
v.
James R. CARPENTER, et al., Defendants-Appellants.
No. 5577.
Court of Appeal of Louisiana, Third Circuit.
September 29, 1976.
Rehearing Denied November 4, 1976.
Writ Refused January 7, 1977.
*345 Caffery, Duhe & Davis by John M. Duhe, Jr., New Iberia, for defendants-appellants.
Fontenot, Gautreaux & Andrus by J. Winston Fontenot, Lafayette, for plaintiffs-appellees.
Before HOOD, CULPEPPER, MILLER, DOMENGEAUX and GUIDRY, JJ.
HOOD, Judge.
Mr. and Mrs. Leonard Schexnayder claim damages primarily for personal injuries sustained by Mrs. Schexnayder as the result of a motor vehicle collision. The defendants are James R. Carpenter, Willie Landry and United States Fidelity and Guaranty Company. The case was tried by jury, the trial resulting in a verdict in favor of Mrs. Schexnayder for $59,000.00, and in favor of Mr. Schexnayder for $4,040.60. Judgment was rendered by the trial court in favor of plaintiffs and against defendants in accordance with that verdict. Defendants appelled.
The sole issue presented relates to quantum. Defendants contend that the award of general damages made to Mrs. Schexnayder is excessive and should be reduced.
The accident occurred about 1:30 P.M. on October 21, 1973. Mrs. Schexnayder was driving her stationwagon west on a highway in Iberia Parish at that time. She made a left turn into a private driveway, and as she did so the left side of her stationwagon was struck by an empty truck and trailer which was behind her and was attempting to overtake and pass the vehicle she was driving. The truck was owned by defendant Carpenter, and was being driven by his employee, Landry.
Mrs. Schexnayder testified that she fainted or was knocked unconscious by the blow, and that when she regained consciousness a minute or two later, she was bleeding from the area of the eye, and her face was "one solid bruise." She stated that she was unable to get out of the car "for a while," that she rejected an offer to call an ambulance, and that instead she asked that a friend be called. Her friend took her to Dauterive's Hospital that afternoon where she was examined by Dr. Elias, who gave her first aid treatment, prescribed a medicine and told her to go home and go to bed. She was not hospitalized. Three days later she went to her family physician, Dr. J. L. Comeaux, and thereafter she was treated by Dr. Comeaux, by Dr. Daniel C. Dunlap, and by Dr. James Blackburn.
*346 The evidence indicates that the collision was of a relatively minor nature. The truck was being driven at a speed of about 35 miles per hour when plaintiff began to make her left turn. Landry applied his brakes, and the truck skidded about 13 feet before it struck plaintiff's stationwagon. Both vehicles came to rest within a few feet of the point of impact. Neither the truck nor the stationwagon overturned. The truck was not damaged, and the cost of repairing the left side of plaintiff's vehicle was $810.42. Mrs. Schexnayder's two year old grandson was riding in the stationwagon at the time, and neither that child not the driver of the truck sustained any injuries as a result of the accident.
A disinterested witness arrived at the scene of the accident within less than one minute after it occurred. He stated that Mrs. Schexnayder had "a little cut over the forehead, or something, and a bunch of glass in her hair, broken glass," but that he talked to her and he observed no other injuries. He did not offer to call an ambulance or to obtain medical assistance for her, but he did call plaintiff's daughter at Mrs. Schexnayder's request. The same witness stated that he saw Mrs. Schexnayder again not more than two or three days later, when she went to a garage to inspect her damaged car, and that he does not recall her having a black eye or any other apparent injury at that time.
The state policement who investigated the accident arrived at the scene a few minutes after the collision occurred. He stated that Mrs. Schexnayder said that she had been hurt, but that there were no physical signs of injury, that no first aid measures were required, that plaintiff was standing by her car when he arrived, that she did not appear to be hurt, and that the officer questioned her at that time about the accident.
The evidence convinces us that Mrs. Schexnayder sustained a black eye, a small cut over her eye and a straining type injury to her neck as a result of the accident. She admits that by December, 1973, or within two months after the accident occurred, she had recovered completely from the black eye, the cut over her eye and all of the aches and pains which she had following the accident, except that she claims that the pain in her neck has persisted. She also contends that since the accident she has experienced some fear of driving her automobile which prevents her from performing her work as she should.
Mrs. Schexnayder testified that her neck pain "steadily got worse" after the accident, and that the pain subsides only with home therapy treatments, consisting of wearing a traction collar. She described the collar as being a "soft collar," or a "double dollar," which snaps at the back and holds her neck up. She stated that "it does relieve the tension and the pain."
With reference to her fear of driving, plaintiff stated that it relates more to the highway than driving in town. She concedes that she resumed driving her car four weeks after the accident, and that she has been driving it daily in connection with her work since that time. She stated that she had such a fear after the accident, but that she didn't mention it to anyone because of the type job she had. Her job required her to do a great deal of driving. She said that she eventually mentioned that fact to her family doctor, and he recommended that she consult Dr. James Blackburn, a phsychiatrist. She was treated by Dr. Blackburn for a period of time, and she concedes that she got "some improvement." The trial took place on March 10, 1976, more than two years after the accident occurred. When asked at the trial what her concerns were at that time, she did not mention her fear of driving, but instead she listed only her neck pain. Her testimony was:
"Q. Now, as of today, what are your problems? What are your main concerns, Mrs. Schexnayder?
"A. As of today?
"Q. Yes.
"A. I have the persistent neck pain. With the home therapywithout the traction, without wearing the collar, but mainly the traction, the pain persists. The traction helps.

*347 The pain only subsides with treatment.
"Q. Do you have any trouble sleeping?
"A. Occasionally."
Mrs. Schexnayder was about 51 years of age and was employed as Educational Director of the Headstart Program in Iberia Parish at the time the accident occurred. Her duties required her to drive to four Headstart centers in various parts of that parish at least twice each week. As a result of the accident she was not able to work for a period of about four weeks, but she returned to work after that four week period and has worked continuously since that time. Some time after she returned to work, she was promoted to the position of Educational Director of a two parish area, including Iberia and St. Martin Parishes, and since she received that promotion she has had to visit at least time Headstart centers in both parishes regularly. She has driven her own car daily from her home in New Iberia to her office in St. Martinville, and then from that office she has regularly driven her car a great deal in making the above visits in widely scattered parts of the two parishes.
Mrs. Schexnayder thus has worked regularly for a period of more than two years and four months since the accident occurred. She has never been disabled except for the above period of about four weeks immediately following the accident. She has never been hospitalized in connection with her alleged injuries. She was not paid her salary during the four week period she was off work, but she was performed all of the duties of her employment and has been paid regularly since that time.
Dr. Elias, the first treating physician, was not called to testify either in person or by deposition.
When Dr. Comeaux, a general practitioner, first examined plaintiff on October 24, 1973, he found that she had a black eye, some soreness and tenderness in her left trapezius muscles and in the deep muscles of the neck. His neurological and x-ray examinations were negative, and he found nothing to indicate that she had a disc injury. He previously had prescribed tranquilizers for her, and following the examination he made on October 24, 1973, he prescribed an increase in the tranquilizers which she had been taking. Later, he also prescribed an anit-inflammatory drug. He treated plaintiff six times over a period of the next 22 months. Dr. Comeaux testified that he found no medical reason why Mrs. Schexnayder could not return to her regular work approximately three or four weeks after the accident occurred. Since he could find no physical signs to explain or justify plaintiff's continued complaints of pain, Dr. Comeaux referred her to a psychiatrist, Dr. James Blackburn, about five or six months after the accident occurred. Both of these doctors then referred her to a neurologist.
Dr. Daniel C. Dunlap, a neurologist, examined plaintiff initially on June 18, 1974, at which time she had complaints of tenderness in the muscles of the lower part of the back of her neck and spine. His x-ray examination showed a narrowing of the space between C-5 and C-6, but he felt that that was caused by a degenerative disease, or arthritis, and that it did not result from the accident. He found no muscle spasm or any other objective signs of injury. In view of plaintiff's complaints, however, Dr. Dunlap prescribed physical therapy, including heat application to the neck, ultra sound, neck traction and some medication. The doctor saw her a total of six times over a period of 14 months, his last examination having been on August 5, 1975. He testified that Mrs. Schexnayder "does not need a cervical fusion," that she has "no limitation of neck movement," that he found "no objective evidence of any problem," and that her "disc disease pre-existed the injury." The doctor conceded that the mere fact that there were "no neurological findings" does not mean that she does not have neck pain, and that if she had no pain before the accident, but did have pain afterward he would presume that her pain was due to the accident. He also stated that "a lot of the treatment that I gave her is based on what she tells me about the way she feels."
*348 Dr. Blackburn, a psychiatrist, first saw plaintiff on May 10, 1974, and he treated her thereafter periodically. The record does not show now long he treated her, or how many times he saw her. He stated, however, that she improved with his psychiatric treatments, and that on occasions she would not return for scheduled visits when she showed a little improvement. Dr. Blackburn stated that by the time of the trial Mrs. Schexnayder was "eight, ninety percent better than she was initially," and that she "should be able to function" with a few more months of intermittent psychiatric care.
The medical bills incurred for the treatment of plaintiff's injuries were included in the award of special damages made to Mr. Schexnayder, and they are not at issue here. We note, however, that a total of $985.00 was paid to all of the doctors who treated Mrs. Schexnayder. Of that amount, $810.00 was paid to Dr. Blackburn alone, for psychiatric treatments which began about seven months after the accident occurred and at least five or six months after she had resumed driving her car. The aggregate sum of $175.00 was paid to all other treating physicians, including Dr. Elias, Dr. Comeaux and Dr. Dunlap. These payments made for medical treatment, considered with the other evidence, indicate that only a moderate amount of treatment was required for Mrs. Schexnayder's injuries.
On the basis of the above evidence, the jury rendered a verdict in favor of Mrs. Schexnayder for $59,000.00. We think that award is excessive and must be reduced.
The injuries which plaintiff sustained as a result of the accident were not of a permanent nature, and they disabled her for only a very brief period of time. She was never hospitalized. The evidence does not show that she has ever suffered severe pain. She missed only four weeks of work, and since she returned to her job she has performed all of the duties of her employment, including a great deal of driving. Her own doctors can find no objective signs of injury. She had been working and driving her car for several months before she first visited her psychiatrist. Her alleged fear of driving thus was not great enough to disable her from driving when Dr. Blackburn first saw her, and yet her psychiatrist says that by the time of the trial she had overcome 80 to 90 percent of even that relatively minor, nondisabling fear of driving. He also stated that she would be completely relieved after a few more treatments. Accepting all of plaintiff's statements as to her alleged traumatic neurosis, it is apparent that her asserted fear of driving is only temporary, it has never manifested itself by any objective sign, and it has never disabled her in any way.
In view of the fact that the jury awarded Mrs. Schexnayder a substantial sum for her injuries, we have interpreted the evidence in a light which is most favorable to her. Under such an interpretation, we believe that an award of $15,000.00 for her injuries is generous, and that that sum is the maximum which should be awarded in this case.
For the reasons assigned, the judgment appealed from is amended by reducing the award made to plaintiff, Mrs. Dorothy M. Schexnayder, from $59,000.00 to the sum of $15,000.00. In all other respects the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiffs-appellees.
AMENDED and AFFIRMED.
MILLER, J., dissents and assigns written reasons.
DOMENGEAUX, J., dissents for the reasons assigned by MILLER, J., and additionally for the stated reasons in my dissenting opinion in Coco v. Winston Industries Inc., 330 So.2d 649; writ granted.
MILLER, Judge (dissenting).
Although the unanimous jury award appears high, I respectfully dissent from the majority decision to reduce it. The majority did not take note of several factors which impressed me. It is significant to me that appellants did not ask the trial judge to grant a remittitur, nor did they seek a new trial. Appellants frankly acknowledged *349 their opinion that such a request would be denied. We are therefore confronted not only with a unanimous jury verdict but one which comes to us with the concurrence of the trial judge. The judge and jury saw and heard the witnesses present their testimony; they unanimously agreed to an award of $59,000 in general damages. Their conclusion should not be disregarded without compelling and uniform evidence to support the conclusion.
Another factor which impressed me, and may have impressed the trial judge and jury, is that these defendants made no effort to present medical evidence of their own. I say again, these defendants did not have this lady's medical complaints examined or evaluated by a single physician of their choice. They came to court with not one shared of evidence to refute the unanimous opinion of every one of Mrs. Schexnayder's doctors that she needed their prescribed treatment and she continues to need treatment.
The majority seems to indicate that Mrs. Schexnayder's continuation at work reduces the value of her claim. The opinion does not mention that Mrs. Schexnayder and her husband were in difficult financial circumstances and she could not afford to give in to her complaints. This 50 year old claimant was at the peak of her career and her motivation to continue in a management position is understandable.
The majority noted the amount of the doctors' bills but failed to include the cost of her medication and her thirty-three (33) prescribed physical therapy treatments treatments which were undertaken over a fourteen (14) month period. The jury might have likened Mrs. Schexnayder's problems relating to the physical therapy treatments to problems ordinarily experienced during periods of hospitalization.
The majority noted Mrs. Schexnayder's use of a neck collar, but failed to note that she also purchased a prescribed traction device for use at home, was trained to use it, and testified that she did use it.
The majority failed to take note of Mrs. Schexnayder's treatment under hypnosis and the fact that her subconscious mind manifested a vivid memory of this accident. Tr. 189. She had nightmare-type dreams related to this accident. Tr. 196. She needs further psychiatric treatment, and the psychiatrist also recommends continued traction and medication. Tr. 195.
All the points noted in the majority opinion were fully presented to the trial judge and jury by appellants' persuasive counsel. Appellants concede the trial court properly instructed the jury.
On the other hand, the judge and jury heard evidence establishing that for two and one-half years plaintiff received treatment for complaints related to this accident; competent physicians were of the opinion that her complaints were sincere, were related to the accident, and required continued treatment. She wore a neck collar for some time; she had neck traction during physical therapy treatments and used a prescribed traction device at home. Her expressed fear of driving and riding in cars was confirmed under hypnosis. Mrs. Schexnayder has been under medical treatment since the accident and her complaints are almost three years old and continuing. No physician recommended she stop her medication or discontinue treatment. The record substantiates Mrs. Schexnayder's claim that she suffers fear and continuing pain related to the accident.
There is evidence to support the unanimous jury award which has been approved by the trial judge.
A reviewing court might well disagree with the amount of the award fixed by the jury and approved by the trial judge, but it is not entitled to substitute its opinion for that of the trier of fact. When a jury fixes an award, and that award is not disapproved by the trial judge, the action of the trial court is entitled to much respect. It should be upset only when it can be demonstrated that the jury abused its discretion. Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 at 809 (La.1974).
I respectfully dissent.